The SMOOT SAND & GRAVEL CORP., Plaintiff,

v.

BALTIMORE STEAM PACKET CO., Defendant.

Civ. A. No. 2986–54.

United States District Court District of Columbia.

Feb. 5, 1957.

Harry L. Ryan, Jr., Washington, D. C., for plaintiff.

John T. Casey, Washington, D. C., and Karl F. Steinmann, Baltimore, Md., for defendant.

HOLTZOFF, District Judge.

This is an action brought by the owner of the Tug Virginia against the owner of the S.S. District of Columbia, to recover damages caused by a collision between the two vessels which took place in the Potomac River about two miles north of Mount Vernon.

■■ The plaintiff's pleading is entitled a complaint, but actually it amounts to a libel in admiralty *in personam* and will be treated as such. The case is within the admiralty jurisdiction of this Court and must be determined under the law of admiralty. It is properly on the civil non-jury calendar under the rules of this Court, since all non-jury cases irrespective of their nature are placed on the same calendar.

The defendant moves for a dismissal of the plaintiff's case at the close of the testimony introduced by the plaintiff.

The pertinent facts are that the Tug Virginia was propelling two scows. The forward scow was located forward of and to the side of the tug, while the second scow was fastened to the tug and was alongside of it, the forward scow being fastened to the second scow. Each scow was carrying a white light about four feet above the water. The tug was carrying the usual green and red running lights, two white lights and a running white light.

The tug was proceeding with its tow in a northerly direction on the Potomac River toward Washington. At this point, the channel is marked by buoys. The tug was following a course close to the Virginia side, in other words, close to the port side of the channel. The S.S. District of Columbia had left Washington and was proceeding on its journey to Norfolk, southerly on the Potomac River, showing the usual running lights. Its course was on the Maryland side of the channel. After sightig the S.S. District of Columbia, the Captain of the tug blew two whistles indicating that he desired to pass starboard to starboard. He claims he re-

ceived no response, and repeated the signal. It is claimed by the tugboat Captain that again he received no answer, but that he saw the S.S. District of Columbia heading across the river to the Virginia shore in front of the tug and cutting across its bow. The tugboat Captain then gave a danger signal and reversed his engines, but a collision took place. The S.S. District of Columbia first hit the head scow and then penetrated the second scow. An impact between the tug and the S. S. District of Columbia followed.

■ The basic rule of navigation applicable to this case is found in U.S. C.A., Title 33, Section 210, which provides that in narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel. The fact that the tug was propelled by diesel engines instead of steam engines would, of course, make no difference. This rule has been applied to channels in the Potomac River. The Newport News, 4 Cir., 105 F. 389. It was said in the case of The Standella, 108 F.2d 619, 620, decided by the Circuit Court of Appeals for the Fifth Circuit, that "this is a cardinal rule of navigation". To be sure, as is contended by counsel for the plaintiff, it is not a hard and fast rule and exceptions may arise due to special circumstances or conditions which would exempt a vessel from complying with it. The burden of showing such special circumstances or good cause for not complying with this rule is on the owner of the vessel that has violated it. This was held by the Supreme Court in the case of The Pennsylvania, 19 Wall. 125, 136, 22 L.Ed. 148: "No reason or circumstance in this case appears for departing from the required rule of the road."

In addition, the tug was guilty of violating the navigation rules that relate to lights. Navigation Rule 80.16(f) requires barges, canal boats or scows when being propelled by being pushed ahead to display a red light on the port

bow and a green light on the starboard bow of the head barge, canal boat or scow. This was not done in this instance. Obviously, this is an important rule, for the accident took place after dark when lights were indispensable.

 It is claimed, however, in behalf of the plaintiff that this requirement applies only when the scow or barge is directly ahead of the tugboat and does not govern when the scow or barge is to the side of the tugboat and is being pushed ahead actually by another barge or scow aft of the forward scow, the second barge or scow being lashed to the tug. Counsel claims that under such circumstances Subsection (h) rather than Subsection (f) applies. While the Court does not agree with counsel in this respect, nevertheless, even if Subsection (h) were to apply, it would not help the owner of the tug. While that section requires only a white light to be carried by the head scow, except when otherwise provided for, nevertheless, it also provides that the white light shall be carried not less than eight feet above the surface. The testimony in this case is that the light was carried only about four feet above the surface.

The Court is of the opinion that under the facts of this case the tug Virginia was guilty of two serious violations of rules of navigation. First, it was on the wrong side of the channel, and second, the head scow did not carry the proper lights. In this connection, it is helpful to refer to the case of Seaboard Tug & Barge, Inc., v. The Lia, D.C., 113 F.Supp. 793, affirmed 1 Cir., 213 F.2d 772, which involved a collision in the Boston Harbor. The violation involved in that case likewise consisted of the fact that one of the vessels was on the wrong side of a narrow channel. It was held that the vessel in that position was at fault. Another similar case is Baltimore Steam Packet Co. v. The Ciudad De Maracaibo, D.C., 142 F.Supp. 273, affirmed by the Court of Appeals for the Fourth Circuit, 241 F.2d 240, which involved a collision outside of the Baltimore Harbor, and where guilt was predicated on failure of a vessel to proceed on the proper side of a narrow channel.

In vew of these considerations, the Court reaches the conclusion, first, that no negligence on the part of the S.S. District of Columbia has been established, but that on the contrary, it has been affirmatively shown that the collision was caused by the fault of the tugboat.

The motion to dismiss is granted.